1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
E-mail: dalekgalipo@yahoo.com
Tel: (818) 347-3333
Fax: (818) 347-4118

2

3

4

5

*Attorney for Plaintiff*

6

7              **UNITED STATES DISTRICT COURT**

8             **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| F.D., a minor, individually, by and through his Guardian *Ad Litem* Francisco Diaz, | Case No. 5:21-cv-1580 |
| | **COMPLAINT FOR DAMAGES** |
| Plaintiff, | 1. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Excessive Force) |
| vs. | 2. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Unreasonable Detention and Arrest) |
| CITY OF SAN BERNARDINO; COUNTY OF SAN BERNARDINO; and DOES 1-10, inclusive, | 3. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Denial of Medical Care) |
| Defendants. | 4. 42 U.S.C. § 1983 (Failure to Intervene) |
| | 5. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy) |
| | 6. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train) |
| | 7. 42 U.S.C. § 1983 (Municipal Liability – Ratification) |
| | 8. False Arrest/Imprisonment |
| | 9. Battery |
| | 10. Negligence |
| | 11. Violation of the Bane Act |
| | **DEMAND FOR JURY TRIAL** |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff F.D., a minor, by and through his guardian ad litem Francisco Diaz, for his Complaint against Defendants CITY OF SAN BERNARDINO; COUNTY OF SAN BERNARDINO; and DOES 1-10, inclusive and hereby alleges as follows:

## **INTRODUCTION**

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the shooting of PLAINTIFF F.D. on August 18, 2020.

2.     Defendants DOES 1-4 caused Plaintiff F.D.'s injuries when they fired shots that seriously injured Plaintiff F.D.

3.     DOES 1-4, inclusive, ("DOE OFFICERS") also caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/ or omissions around the time of the incident.

4.     DOES 5-6, inclusive, ("DOE DEPUTIES") also caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/ or omissions around the time of the incident.

5.     Defendants CITY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO, and DOES 7-10, inclusive, also caused various injuries and are liable under state and federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6.     This action is in the public interest as Plaintiff seeks by means of this civil rights action to hold accountable those responsible for the shooting and serious bodily injury inflicted by Defendants on Plaintiff, and CITY OF

1

SAN BERNARDINO's and COUNTY OF SAN BERNARDINO's ratification, failure to train, and custom, practice and/or policy of inaction in the face of serious constitutional violations.

## THE PARTIES

7.     At all relevant times, Plaintiff F.D. was an individual residing in San Bernardino County, California.

8.     Defendant DOES 1-4 ("DOE OFFICERS"), inclusive, are officers for the CITY. At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as City of San Bernardino Police Department officers.

9.     Defendant CITY OF SAN BERNARDINO ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  Defendant CITY is a chartered political subdivision of the State of California that is within this judicial district with the capacity to be sued.  Defendant CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino Police Department ("SBPD").  At all relevant times, Defendant CITY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the SBPD and its employees and agents complied with the laws of the United States and the State of California.   At all relevant times, Defendant CITY was the employer of Defendants DOE OFFICERS, inclusive.

10.     Defendant DOES 5-6 ("DOE DEPUTIES") are sheriff's deputies working for the San Bernardino County Sheriff's Department. At all relevant times, DOE DEPUTIES were acting under color of law within the course and scope of their duties as officers working for the San Bernardino Sheriff's Department and at other times they were working in their personal capacity as

individuals outside the scope of their employment.  At all relevant times, DOE DEPUTIES were acting with the complete authority and ratification of their principal, COUNTY OF SAN BERNARDINO.

11.     Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  COUNTY is a chartered political subdivision of the State of California that is within this judicial district with the capacity to be sued.   COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department.  At all relevant times, Defendant COUNTY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the San Bernardino County Sheriff's Department and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, Defendant COUNTY was the employer of Defendants DOE DEPUTIES, inclusive.

12.     Defendants DOES 7-8, inclusive, are managerial, supervisorial, or policymaking employees of the San Bernardino Police Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the San Bernardino Police Department.  DOES 7-8, inclusive, were acting with the complete authority of their principal, CITY OF SAN BERNARDINO.

13.     Defendants DOES 9-10, inclusive, are managerial, supervisorial, or policymaking employees of the San Bernardino County Sheriff's Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the San Bernardino County Sheriff's Department.  DOES 9-10, inclusive, were acting with the complete authority of their principal, COUNTY OF SAN BERNARDINO.

14.     Plaintiff is ignorant of the true names and capacities of Defendants Does 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained.  Plaintiff is informed and believes, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiff's damages.

15.     On information and belief, DOES 1-10, inclusive, were at all relevant times residents of the County of San Bernardino.

16.     Plaintiff is informed and believes, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

17.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein all Defendants acted under color of law, statute, ordinance, regulations, customs and usages of the State of California, CITY OF SAN BERNARDINO, and COUNTY OF SAN BERNARDINO.

18.     All Defendants who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the San Bernardino Police Department and/or San Bernardino County Sheriff's Department.

19.     Plaintiff F.D. suffered serious bodily injury as a direct and proximate result of the actions of DOES 1-10.  Defendants DOES 1-10 are directly liable for Plaintiff F.D.'s injuries under federal law pursuant to 42 U.S.C. § 1983 and state law.

20.   On February 11, 2021, Plaintiff F.D. timely filed a claim for damages with the CITY OF SAN BERNARDINO pursuant to applicable sections of the California Government Code.  On May 27, 2021, Plaintiff F.D.'s claim was denied by a written notice of rejection of claim.

21.   On February 11, 2021, Plaintiff F.D. timely filed a claim for damages with the COUNTY OF SAN BERNARDINO pursuant to applicable sections of the California Government Code. On March 23, 2021, Plaintiff F.D.'s claim was denied by a written notice of rejection of claim.

## JURISDICTION AND VENUE

22.   The Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff F.D.'s state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

23.   Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

## FACTS COMMON TO PLAINTIFF F.D.'s CLAIMS FOR RELIEF

24.   Plaintiff F.D. repeats and re-alleges each and every allegation of paragraphs 1 through 23, inclusive, as if fully set forth herein.

25.   Plaintiff sustained injuries, including but not limited to pain and suffering when Defendants DOE OFFICERS shot him.  Said DOE OFFICERS were on-duty employees of Defendant CITY, each of whom was acting under

5

1 | color of law and as an employee or agent of the City of San Bernardino.

2 | 26.   On August 18, 2020, Plaintiff was the passenger in a vehicle that
3 | was pulled over by SBPD officers. After the vehicle was stopped, Plaintiff
4 | exited the vehicle and entered an apartment complex.

5 | 27.   Shortly thereafter, Plaintiff F.D. tripped and fell to the ground. As
6 | he was getting up from the ground, DOE OFFICERS, while working under
7 | color of law and in the course and scope of their employment as CITY police
8 | officers, fired their weapons and struck Plaintiff F.D. multiple times. DOE
9 | OFFICERS provided no verbal warnings prior to shooting Plaintiff F.D. that
10 | deadly force would be used.

11 | 28.   At the time of the shooting, Plaintiff F.D. posed no immediate
12 | threat of death or serious bodily injury to anyone.

13 | 29.   Plaintiff F.D. suffered multiple gunshot wounds, including to the
14 | lower back, leg, and arm.

15 | 30.   Following the shooting, DOE DEPUTIES arrived to the scene and,
16 | together with DOE OFFICERS, failed to summon medical assistance to
17 | Plaintiff F.D. as he lay bleeding on the ground. Approximately twenty minutes
18 | after the shooting, when an ambulance arrived, DOE DEPUTIES and DOE
19 | OFFICERS prevented medical personnel from accessing Plaintiff F.D.,
20 | denying him medical care.

21 | 31.   The use of force against Plaintiff F.D. was excessive and
22 | objectively unreasonable under the circumstances, especially because Plaintiff
23 | F.D. did not pose an immediate threat of death or serious bodily injury to
24 | anyone at the time of the shootings, there were less lethal alternatives
25 | available, and no warning that deadly force was going to be used was given
26 | prior to shooting.

27 | / / /

28 | / / /

6

**FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF F.D. against DEFENDANT OFFICERS, inclusive)

32.    Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 31, inclusive, as if fully set forth herein.

33.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

34.    Defendant OFFICERS, inclusive, did not know if Plaintiff F.D. committed any crime, had no information that Plaintiff F.D. had any outstanding wants or warrants, had no information the Plaintiff F.D. was armed, and had no information that Plaintiff F.D. had harmed any person.

35.    When Defendant OFFICERS, inclusive, arrived on scene, they had no information that Plaintiff F.D. had threatened any person, and Plaintiff F.D. did not verbally threaten any person after OFFICERS made contact with him.

36.    Defendant OFFICERS failed to employ tactics to de-escalate the situation, failed to give Plaintiff F.D. proper commands. The shooting violated OFFICERS' training and standard police officer training, including violating training with respect to the use of deadly force.

37.    Plaintiff F.D. never threatened anyone, made no aggressive movements toward anyone and no physical movements that would reasonably suggest to Defendant OFFICERS that Plaintiff F.D. was attempting, willing, or intending to inflict harm to anyone.

38.    Defendant OFFICERS, inclusive, used excessive and unreasonable force, including deadly force, against Plaintiff F.D.  Defendant OFFICERS failed to issue any warning that they would use deadly force before they fired their weapons. There were less lethal alternatives available to Defendant OFFICERS, and Plaintiff F.D. was not an immediate threat of death

or serious bodily injury to Defendant OFFICERS or anyone else when Defendant OFFICERS used excessive and unreasonable force, including deadly force, on Plaintiff F.D. Defendant OFFICERS' acts and omissions deprived Plaintiff F.D. of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff F.D. under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39.     Defendant OFFICERS, inclusive, were acting under color of state law and within the course and scope of their employment as police officers for the CITY.

40.     As a direct result of the aforesaid acts and omissions of Defendant OFFICERS, inclusive, Plaintiff F.D. suffered great physical and mental injury, fear and emotional distress.

41.     The conduct of Defendant OFFICERS, inclusive, alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff F.D. and warrants the imposition of exemplary and punitive damages in an amount according to proof.

42.     Plaintiff F.D. seeks damages, including but not limited to, his past and future pain and suffering loss of enjoyment of life, medical expenses, and loss of earning capacity under this claim.  Plaintiff F.D. also seeks statutory attorneys' fees and costs under this claim.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## **SECOND CLAIM FOR RELIEF**

**Unreasonable Search and Seizure – Unreasonable Detention and Arrest (42 U.S.C. § 1983)**

(By PLAINTIFF F.D. against DEFENDANTS DOE OFFICERS and DOE DEPUTIES, inclusive)

43.     Plaintiff F.D. repeats and realleges each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44.     The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from unreasonable detention in violation of their right to privacy. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

45.     Defendants DOE OFFICERS and DOE DEPUTIES did not observe Plaintiff F.D. commit any crime, nor did Defendants DOE OFFICERS or DOE DEPUTIES have any information that Plaintiff F.D. was armed.

46.     After DOE OFFICERS shot Plaintiff, DOE DEPUTIES arrived to the scene. As Plaintiff lay on the ground immobile, bleeding, and in obvious and critical need of emergency medical care and treatment, DOE OFFICERS and DOE DEPUTIES blocked paramedics' access to Plaintiff F.D. for approximately twenty minutes, therefore detaining him in an unreasonable manner.

47.     When Defendants DOE OFFICERS and DOE DEPUTIES prevented medical personnel from reaching Plaintiff F.D., they violated Plaintiff F.D.'s right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

48.     As a result of their misconduct, Defendants DOE OFFICERS and DOE DEPUTIES are liable for Plaintiff's injuries, either because they were

integral participants in the excessive use of force and unreasonable detention, or because they were integral participants and/or failed to intervene to prevent these violations.

49.   The conduct of Defendants DOE OFFICERS and DOE DEPUTIES in unreasonably detaining Plaintiff F.D. was malicious, oppressive and in reckless disregard for the rights and safety of Plaintiff F.D. and warrants the imposition of exemplary and punitive damages as to Defendants DOE OFFICERS and DOE DEPUTIES.

50.   Plaintiff F.D. seeks damages, including but not limited to, his past and future pain and suffering loss of enjoyment of life, medical expenses, and loss of earning capacity under this claim.  Plaintiff F.D. also seeks statutory attorneys' fees and costs under this claim. Plaintiff also seeks attorney's fees pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure – Denial of Medical Care (42 U.S.C. § 1983)**

(By PLAINTIFF F.D. against DEFENDANTS DOE OFFICERS and DOE DEPUTIES, inclusive)

51.   Plaintiff repeats and re-alleges each and every allegation in paragraph 1 through 50 of the Complaint with the same force and effect as if fully set forth herein.

52.   After DOE OFFICERS shot Plaintiff, DOE DEPUTIES arrived to the scene. As Plaintiff lay on the ground immobile, bleeding, and in obvious and critical need of emergency medical care and treatment, DOE OFFICERS and DOE DEPUTIES did not timely summon medical care for Plaintiff. After bystanders summoned medical care, Defendants DOE OFFICERS and DOE DEPUTIES blocked paramedics' access to Plaintiff F.D. for approximately

10

twenty minutes.

53. The delay of medical care to Plaintiff caused him extreme physical and emotional pain and suffering, and was a contributing cause to the extent of Plaintiff's injuries.

54. The denial of medical care by DOE OFFICERS and DOE DEPUTIES deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

55. As a result of the foregoing, Plaintiff suffered great physical pain, mental anguish, emotional distress, loss of quality of life, embarrassment, impairment, disfigurement, and loss of earning capacity.

56. Defendants DOE OFFICERS and DOE DEPUTIES knew that failure to provide timely medical treatment to Plaintiff could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Plaintiff great bodily harm, physical pain, mental anguish, emotional distress, impairment, disfigurement, and loss of quality of life.

57. The conduct of Defendants DOE OFFICERS and DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard of the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE OFFICERS and DOE DEPUTIES.

58. As a result of their misconduct, Defendants DOE OFFICERS and DOE DEPUTIES are liable for Plaintiff's injuries, either because they were integral participants in the excessive use of force and denial of medical care, or because they were integral participants and/or failed to intervene to prevent these violations.

59.    Plaintiff seeks damages, including but not limited to, his past and future pain and suffering, including but not limited to: impairment, disfigurement, emotional distress, mental anguish, loss of quality of life, and past and future medical expenses. Plaintiff also seeks attorneys' fees and costs under this claim.

### FOURTH CLAIM FOR RELIEF

### Failure to Intervene (42 U.S.C. § 1983)

(By Plaintiff against DOE OFFICERS and DOE DEPUTIES)

60.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 of this Complaint with the same force and effect as if fully set forth herein.

61.    Defendants DOE OFFICERS and DOE DEPUTIES knew and understood that Plaintiff was being subjected to a deprivation of his constitutional rights when Defendants DOE OFFICERS shot Plaintiff and failed to summon medical assistance in a timely manner. Defendants DOE OFFICERS and DOE DEPUTIES were in the position to, and had the duty and authority to, intervene to prevent the wrongdoing committed against Plaintiff.

62.    As a direct and proximate result of Defendant DOE OFFICERS' and DOE DEPUTIES' failure to intervene, Plaintiff has incurred substantial emotional and physical harm.

63.    Plaintiff seeks damages for his past and future pain and suffering, including but not limited to: impairment, disfigurement, emotional distress, mental anguish, loss of quality of life, and past and future medical expenses under this claim. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

/ / /

/ / /

COMPLAINT FOR DAMAGES

## **FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

(By Plaintiff against Defendants CITY, COUNTY, and DOES 7-10, inclusive)

64.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 63, inclusive, as if fully set forth herein.

65.     Defendants DOE OFFICERS and DOE DEPUTIES, inclusive, acted under color of state law.

66.     Defendants DOE OFFICERS and DOE DEPUTIES, inclusive, acted pursuant to an expressly adopted official policy or longstanding practice or custom of the Defendants CITY, COUNTY, and DOES 7-10, inclusive.

67.     On information and belief, Defendants DOE OFFICERS and DOE DEPUTIES, inclusive, were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with deprivation of Plaintiff's rights.

68.     Defendants CITY, COUNTY and DOES 7-10, inclusive, together with other CITY and COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive and unreasonable force, including deadly force on persons who do not pose a risk of imminent death or serious bodily injury to others;

(b)     Providing inadequate training regarding the use of force, including deadly force;

(c)     Employing and retaining as police officers, individuals such as Defendant DOE OFFICERS and DEPUTIES, inclusive, who Defendant CITY, COUNTY, and DOES 7-10, inclusive, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

13

(d)　　Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, COUNTY officers, and other personnel, including Defendant OFFICERS and DEPUTIES who CITY and COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits;

(e)　　Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by officers of the CITY and deputies of the COUNTY.

(f)　　Failing to adequately discipline CITY officers and COUNTY deputies for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)　　Announcing that unjustified shootings are "within policy" even when they are later determined in court to be unconstitutional and refusing to discipline, terminate and retrain officers involved in unconstitutional conduct;

(h)　　Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officers do not report other officers' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(i)　　Maintaining a policy of inaction and an attitude of indifference towards police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal

14

1    prosecution who participate in shootings.

2    69.    By reason of the aforementioned acts and omissions, Plaintiff has

3    endured substantial pain and suffering.

4    70.    Defendant CITY, COUNTY, and DOES 7-10, inclusive, together

5    with various other officials, whether named or unnamed, had either actual or

6    constructive knowledge of the deficient policies, practices and customs

7    alleged herein.  Despite having knowledge as stated above, these Defendants

8    condoned, tolerated and through actions and inactions thereby ratified such

9    policies.   Said Defendants also acted with deliberate indifference to the

10   foreseeable effects and consequences of these policies with respect to the

11   constitutional rights of Plaintiff and other individuals similarly situated.

12   71.    By perpetrating, sanctioning, tolerating and ratifying the

13   outrageous conduct and other wrongful acts, Defendants CITY, COUNTY,

14   and DOES 7-10, inclusive, acted with intentional, reckless, and callous

15   disregard for the Plaintiff's Constitutional rights.   Furthermore, the policies,

16   practices, and customs implemented, maintained, and tolerated by Defendants

17   CITY, COUNTY, and DOES 7-10, inclusive, were affirmatively linked to and

18   were a significantly influential force behind Plaintiff's injuries.

19   72.    The acts of each of Defendant DOES 7-10, inclusive, were willful,

20   wanton, oppressive, malicious, fraudulent, and extremely offensive and

21   unconscionable to any person of normal sensibilities, and therefore warrants

22   imposition of exemplary and punitive damages as to DOES 7-10, inclusive.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

73.   The following are only a few examples of cases where officers from the involved agencies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendants CITY and COUNTY routinely ratify such behavior:

**Defendant CITY**

(a)   In *Castaneda v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiffs alleged that the involved SBPD officers used excessive and unreasonable force when they stopped decedent without reasonable suspicion or probable cause and shot decedent when he was not an immediate threat of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(b)   In *Wade v. City of San Bernardino*, Case No. CV-11-09831 GHK (SPx), plaintiffs alleged that the involved SBPD officers uses excessive and unreasonable force when they shot the plaintiff multiple times, when he did not pose an immediate risk of death or serious bodily injury.  The involved officer also shot six individuals within a sixteen-month period without any retraining or discipline.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(c)   In *Dockery v. City of San Bernardino*, Case No. 5:20-CV-1189, plaintiff alleged that the involved SBPD officers uses excessive and unreasonable force when they shot the plaintiff in the back, when he did not pose an immediate risk of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded,

retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(d)     In *Trejo v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiff alleged that defendant City officers used excessive and unreasonable force when they shot the decedent who was not an immediate threat of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(e)     In *Brown v. City of San Bernardino*, Case No. CIV-DS-1007751, plaintiff alleged that he suffered a battery and false arrest by defendant officers when they pushed him to the ground without provocation and falsely detained him on a 5150 hold.  A jury found in favor of plaintiff.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force and seizure.

(f)     In *King v. City of San Bernardino*, Case No. 2:09-cv-01339-DMG-PJW, plaintiff alleged that defendant officer used excessive deadly force when he shot plaintiff nine times as plaintiff ran away with visibly empty hands and having committed no crime.  A unanimous jury found in favor of plaintiff.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(g)     In *Nash v. City of San Bernardino*, Case No. CV-09-08671-RGK (FFMx), plaintiff alleged that officers used excessive force when they used a lethal chokehold, hogtie restraint, and placed hundreds of pounds on decedent's back causing his death by restraint asphyxia.  Defendants claimed that the officers used reasonable force.  A unanimous jury found

17

that the force was unreasonable.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

**Defendant COUNTY**

(a)      In *Allen v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., an excessive force lawsuit, arose from the shooting of a man by San Bernardino County sheriff's deputies. The case recently settled for an undisclosed amount.

(b)      In *Phillips, et al. v. County of San Bernardino, et al.*, Case No: 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million in a lawsuit brought by the family of a woman who was shot and killed by a deputy working for the COUNTY while driving in her vehicle, even though she did not pose an immediate threat of death or serious bodily injury to deputies or anyone else.

(c)      In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(d)      In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-01128, C.D. Cal., the parents of a 29-year-old mentally ill, man sued after their son was shot and killed by a deputy working for the COUNTY. The jury returned a $33.5 million verdict against the COUNTY and found for plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and shooting to be within policy, and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retrained the deputy,

18

1   and the deputy was later involved in yet another shooting of a man. The

2   COUNTY settled with the victim pre-litigation.

3   74.   By reason of the aforementioned acts and omissions of Defendants

4   CITY, COUNTY, and DOES 7-10, inclusive, Plaintiff suffered past and future

5   pain and suffering, loss of enjoyment of life, medical expenses, and loss of

6   earning capacity.

7   75.   Accordingly, Defendants CITY, COUNTY, and DOES 7-10,

8   inclusive, each are liable for compensatory damages under 42 U.S.C. § 1983.

9   76.   Plaintiff F.D. also seeks attorneys' fees and costs under this claim.

10

11   **<u>SIXTH CLAIM FOR RELIEF</u>**

12   **Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

13   (By Plaintiff against Defendants City, County, and DOES 7-10, inclusive)

14   77.   Plaintiff repeats and re-alleges each and every allegation in

15   paragraphs 1 through 76 of this Complaint with the same force and effect as

16   if fully set forth herein.

17   78.   Defendants DOE OFFICERS and DOE DEPUTIES, inclusive,

18   acted under color of law.

19   79.   The acts of Defendants DOE OFFICERS and DOE DEPUTIES,

20   inclusive, deprived Plaintiff of his particular rights under the United States

21   Constitution.

22   80.   On information and belief, CITY and COUNTY failed to properly

23   and adequately train Defendants DOE OFFICERS and DOE DEPUTIES,

24   respectively, including but not limited to, with regard to the use of physical

25   force, less than lethal force, lethal force, and summoning medical attention.

26   81.   The training policies of Defendants CITY and COUNTY were not

27   adequate to train their officers and deputies to handle the usual and recurring

28   situations with which they must deal, including de-escalation techniques, the

use of less than lethal and lethal force, pre-shooting tactics, and summoning medical care.

82.     The training that CITY police officers and COUNTY sheriff's deputies, including Defendants DOE OFFICERS and DOE DEPUTIES, should have received with regards to deployment of lethal force includes giving verbal warnings prior to firing shots and timely summoning medical care following a shooting.

83.     Defendants CITY, COUNTY, and DOES 7-10, inclusive, were deliberately indifferent to the obvious consequences of their respective failures to train their officers and deputies adequately.

84.     The failure of Defendants CITY, COUNTY, and DOES 7-10, inclusive, to provide adequate training caused the deprivation of Plaintiff's rights by Defendants DOE OFFICERS and DOE DEPUTIES. Defendants' failure to train is so closely related to the deprivation of Plaintiff's rights so as to be the moving force that caused the ultimate injury.

85.     The following are only a few examples of cases where officers from the involved agencies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendants CITY and COUNTY routinely ratify such behavior:

**Defendant CITY**

(a)     In *Castaneda v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiffs alleged that the involved SBPD officers used excessive and unreasonable force when they stopped decedent without reasonable suspicion or probable cause and shot decedent when he was not an immediate threat of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained,

suspended, or otherwise penalized in connection with use of unreasonable force.

(b)      In *Wade v. City of San Bernardino*, Case No. CV-11-09831 GHK (SPx), plaintiffs alleged that the involved SBPD officers uses excessive and unreasonable force when they shot the

(c)      plaintiff multiple times, when he did not pose an immediate risk of death or serious bodily injury.  The involved officer also shot six individuals within a sixteen-month period without any retraining or discipline.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(d)      In *Dockery v. City of San Bernardino*, Case No. 5:20-CV-1189, plaintiff alleged that the involved SBPD officers uses excessive and unreasonable force when they shot the plaintiff in the back, when he did not pose an immediate risk of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(e)      In *Trejo v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiff alleged that defendant City officers used excessive and unreasonable force when they shot the decedent who was not an immediate threat of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(f)      In *Brown v. City of San Bernardino*, Case No. CIV-DS-1007751, plaintiff alleged that he suffered a battery and false arrest by defendant officers when they pushed him to the ground without

provocation and falsely detained him on a 5150 hold.  A jury found in favor of plaintiff.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force and seizure.

(g)     In *King v. City of San Bernardino*, Case No. 2:09-cv-01339-DMG-PJW, plaintiff alleged that defendant officer used excessive deadly force when he shot plaintiff nine times as plaintiff ran away with visibly empty hands and having committed no crime.  A unanimous jury found in favor of plaintiff.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(h)     In *Nash v. City of San Bernardino*, Case No. CV-09-08671-RGK (FFMx), plaintiff alleged that officers used excessive force when they used a lethal chokehold, hogtie restraint, and placed hundreds of pounds on decedent's back causing his death by restraint asphyxia.  Defendants claimed that the officers used reasonable force.  A unanimous jury found that the force was unreasonable.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

## Defendant COUNTY

(a)     In *Allen v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., an excessive force lawsuit, arose from the shooting of a man by San Bernardino County sheriff's deputies. The case recently settled for an undisclosed amount.

(b)     In *Phillips, et al. v. County of San Bernardino, et al.*, Case No: 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million in a lawsuit brought by the family of a woman who was shot and killed by

22

a deputy working for the COUNTY while driving in her vehicle, even though she did not pose an immediate threat of death or serious bodily injury to deputies or anyone else.

(c)       In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(d)       In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-01128, C.D. Cal., the parents of a 29-year-old mentally ill, man sued after their son was shot and killed by a deputy working for the COUNTY. The jury returned a $33.5 million verdict against the COUNTY and found for plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and shooting to be within policy, and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retrained the deputy, and the deputy was later involved in yet another shooting of a man. The COUNTY settled with the victim pre-litigation.

86.    By reason of the aforementioned acts and omissions, Plaintiff has suffered damages including but not limited to past and future pain and suffering and medical expenses.

87.    Accordingly, Defendants CITY, COUNTY, and DOES 7-10, inclusive, are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983. Plaintiff F.D. seeks damages, including but not limited to, his past and future pain and suffering loss of enjoyment of life, medical expenses, and loss of earning capacity under this claim.  Plaintiff F.D. also seeks statutory attorneys' fees and costs under this claim.

## **SEVENTH CLAIM FOR RELIEF**

### **Municipal Liability – Ratification (42 U.S.C. § 1983)**

(By Plaintiff against CITY, COUNTY, and DOES 7-10, inclusive)

88.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 87 of this Complaint with the same force and effect as if fully set forth herein.

89.   Defendant DOE OFFICERS and DOE DEPUTIES, inclusive, acted under color of law.

90.   The acts of Defendants DOE OFFICERS and DOE DEPUTIES, inclusive, deprived Plaintiff of his particular rights under the United States Constitution.

91.   Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

92.   Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants DOE OFFICERS and DOE DEPUTIES and the bases for them, specifically approved of Defendants DOE OFFICERS' and DOE DEPUTIES' acts.

93.   On information and belief, CITY and COUNTY final policymakers, including DOES 7-10, inclusive, knew that Plaintiff never threatened to harm or harmed anyone, and was at the time of the shooting.

94.   On information and belief, the official policies with respect to the incident are that officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the officers may use deadly force to prevent the individual's escape.  The officers' actions deviated

24

from these official policies because Plaintiff did not pose an immediate threat of death or serious bodily injury to the involved officers or anyone, he was, and he never physically injured anyone prior to or during the incident nor did he threaten to do so.

95.   On information and belief, final policymakers for the CITY and COUNTY have determined that the acts of DOE OFFICERS and DOE DEPUTIES were "within policy."

96.   The following are only a few examples of cases where officers from the involved agencies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendants CITY and COUNTY routinely ratify such behavior:

**Defendant CITY**

(a)   In *Castaneda v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiffs alleged that the involved SBPD officers used excessive and unreasonable force when they stopped decedent without reasonable suspicion or probable cause and shot decedent when he was not an immediate threat of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(b)   In *Wade v. City of San Bernardino*, Case No. CV-11-09831 GHK (SPx), plaintiffs alleged that the involved SBPD officers uses excessive and unreasonable force when they shot the plaintiff multiple times, when he did not pose an immediate risk of death or serious bodily injury.  The involved officer also shot six individuals within a sixteen-month period without any retraining or discipline.  Upon information and belief, the involved officers were never disciplined, reprimanded,

retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(c)     In *Dockery v. City of San Bernardino*, Case No. 5:20-CV-1189, plaintiff alleged that the involved SBPD officers uses excessive and unreasonable force when they shot the plaintiff in the back, when he did not pose an immediate risk of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(d)     In *Trejo v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiff alleged that defendant City officers used excessive and unreasonable force when they shot the decedent who was not an immediate threat of death or serious bodily injury.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(e)     In *Brown v. City of San Bernardino*, Case No. CIV-DS-1007751, plaintiff alleged that he suffered a battery and false arrest by defendant officers when they pushed him to the ground without provocation and falsely detained him on a 5150 hold.  A jury found in favor of plaintiff.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force and seizure.

(f)     In *King v. City of San Bernardino*, Case No. 2:09-cv-01339-DMG-PJW, plaintiff alleged that defendant officer used excessive deadly force when he shot plaintiff nine times as plaintiff ran away with visibly empty hands and having committed no crime.  A unanimous jury found in favor of plaintiff.  Upon information and belief, the involved officers were

26

never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

(g)     In *Nash v. City of San Bernardino*, Case No. CV-09-08671-RGK (FFMx), plaintiff alleged that officers used excessive force when they used a lethal chokehold, hogtie restraint, and placed hundreds of pounds on decedent's back causing his death by restraint asphyxia. Defendants claimed that the officers used reasonable force.  A unanimous jury found that the force was unreasonable.  Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

## Defendant COUNTY

(a)     In *Allen v. County of San Bernardino*, Case No.: 8:20-cv-00567-JFW-SHK, C.D. Cal., an excessive force lawsuit, arose from the shooting of a man by San Bernardino County sheriff's deputies. The case recently settled for an undisclosed amount.

(b)     In *Phillips, et al. v. County of San Bernardino, et al.*, Case No: 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million in a lawsuit brought by the family of a woman who was shot and killed by a deputy working for the COUNTY while driving in her vehicle, even though she did not pose an immediate threat of death or serious bodily injury to deputies or anyone else.

(c)     In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to

reprimand, retrain, or otherwise penalize the deputies for their conduct.

(d)     In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-01128, C.D. Cal., the parents of a 29-year-old mentally ill man sued after their son was shot and killed by a deputy working for the COUNTY. The jury returned a $33.5 million verdict against the COUNTY and found for plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and shooting to be within policy, and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retrained the deputy, and the deputy was later involved in yet another shooting of a man. The COUNTY settled with the victim pre-litigation.

97.     By reason of the aforementioned acts and omissions, Plaintiff has and will suffer damages including but not limited to past and future pain and suffering and medical expenses. As such, Plaintiff seeks compensatory damages under this claim.

98.     Accordingly, DEFENDANT CITY, COUNTY, and DOES 7-10, inclusive, are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983. Plaintiff F.D. seeks damages, including but not limited to, his past and future pain and suffering loss of enjoyment of life, medical expenses, and loss of earning capacity under this claim.   Plaintiff F.D. also seeks statutory attorneys' fees and costs under this claim. Plaintiff also seeks attorneys' fees and costs of suit under this claim.

/ / /

/ / /

/ / /

/ / /

/ / /

### EIGHTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code § 820 and California Common Law)**

(By Plaintiff against Defendants DOE OFFICERS and CITY)

99.    Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.    Defendants DOE OFFICERS, inclusive, while working as officers for the CITY, and acting within the course and scope of their duties, intentionally shot Plaintiff multiple times.  As a result of the actions of Defendants DOE OFFICERS, inclusive, Plaintiff was seriously injured.  DOE OFFICERS, inclusive, had no legal justification for using force, including deadly force, against Plaintiff, and DOE OFFICERS' use of force while carrying out their duties as officers was an unreasonable under the circumstances.

101.    At all relevant times, Plaintiff was not an immediate threat of death or serious bodily injury to anyone, including Defendants DOE OFFICERS, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were available to Defendants DOE OFFICERS.

102.    Defendant CITY and DOES 7-8, inclusive, are directly liable and responsible for the acts of Defendants DOE OFFICER, inclusive, because Defendant CITY and DOES 7-8, inclusive, failed to adequately train, discipline, supervise, or in any other way control DOE OFFICERS, inclusive, in the exercise of their unlawful use of excessive and unreasonable force.

103.    Defendant CITY is vicariously liable for the wrongful acts of DOE OFFICERS, inclusive, pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment is the employees' acts would subject them to liability.

104. The conduct of Defendants DOE OFFICERS, inclusive, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages.

105. Plaintiff is seeking damages including but not limited to: past and future medical expenses; loss of future earnings; loss of ability to provide household services; physical pain, mental suffering, and emotional distress under this claim.

## NINTH CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code § 820 and California Common Law)

(By Plaintiff against all DEFENDANTS)

106. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 105, inclusive, as if fully set forth herein.

107. Police officers, including Defendants, have a duty to use reasonable care to prevent harm and injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving appropriate warnings, and not using any force unless necessary, using the least amount of force necessary, and only using deadly force as a last resort. These duties also include providing proper training and equipment to deputies so that they may perform their duties in accordance with the department policies, properly investigate use of force incidents, and punish, re-train, terminate, and/or prosecute violators of those policies and the law.

108. The Defendants breached their duty of care. Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

        (a)    the failure to properly and adequately assess the need to use force against Plaintiff;

(b)     the negligent tactics and handling of the situation with Plaintiff, including pre-shooting negligence;

(c)     the negligent scope and manner of the use of force against Plaintiff;

(d)     the failure to properly train and supervise employees, both professional and non-professional, including DOE OFFICERS and DOE DEPUTIES, inclusive;

(e)     the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs and protect the rights of Plaintiff;

(f)     the negligent handling of evidence, witnesses, and the negligent investigation of the shooting of Plaintiff; and

(g)     the failure to punish, re-train, terminate, and/or prosecute violators of Department policies and the law.

109.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff was caused to suffer, including but not limited to, severe past and future mental and physical pain and suffering and medical expenses.

110.   At all relevant times, Plaintiff was not an immediate threat of death or serious bodily injury to anyone, including Defendants, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were available to Defendants.

111.   The CITY and COUNTY are vicariously liable for the wrongful acts of DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employees' act would subject him or her to liability.

112.   Plaintiff is seeking damages including but not limited to: past and future medical expenses; loss of future earnings; loss of ability to provide household services; physical pain, mental suffering, and emotional distress under this claim.

## TENTH CLAIM FOR RELIEF

### Violation of Cal. Civ. Code § 52.1 and California Common Law)

(By Plaintiff against all DEFENDANTS)

113.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 112 of this Complaint with the same force and effect as if fully set forth herein.

114.   The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement.   California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.   *See Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995).   "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1."   *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

115.   Defendants violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures when they used excessive and unreasonable force against him and later failed to timely summon medical assistance. Defendants specifically intended to violate Plaintiff's constitutional rights as stated above, as demonstrated by Defendant's reckless disregard for Plaintiff's

32

constitutional rights.  Thus, Plaintiff can recover for violation of the Bane Act.  *See Reese v. County of Sacramento*, 888 F.3d 1030, 1040-45 (2018).

116.   On August 18, 2020, Defendants seized Plaintiff when Defendants fired multiple gunshots at Plaintiff, striking him in multiple places, including to the back.  Defendants shot the Plaintiff after he had just gotten up from the ground and posed no threat to Defendants. Defendants issued no commands or warnings before they shot Plaintiff.  Defendants made no efforts to de-escalate the situation upon their arrival or formulate a tactical plan.

117.  Defendants had no information that Plaintiff committed any crime; Defendants had no information that anyone was injured; Plaintiff never verbally threatened any of the involved officers; Defendants had no information that Plaintiff ever verbally threatened anyone; Defendants never heard Plaintiff say anything; Plaintiff never attempted to harm either Defendants or anyone else; and Plaintiff never made any threatening movements toward anyone.

118.  At all times prior to the deployment of multiple gunshots fired at Plaintiff: cover was available to all Defendants; Defendants and the involved officers were not at risk of immediate death or serious bodily injury based on Plaintiff's actions; no other person was at risk of immediate death of serious bodily injury based on Plaintiff's actions; Defendants had time to issue proper commands to Plaintiff; Defendants had time to allow Plaintiff to comply with commands if they were given; Defendants were armed with less-lethal force options; it was feasible for Defendants to utilize those less-lethal force options; there were several other reasonable alternatives to the use of deadly force available to the Defendants; and Defendants failed to exhaust all reasonable less-lethal force options.

119. Following the deployment of deadly force, Defendants intentionally and maliciously prevented medical personnel from accessing and providing critically needed medical assistance to Plaintiff.

120. Defendants violated Plaintiff's Constitutional right to be free from excessive and unreasonable force by police officers. Defendants intended to violate Plaintiff's rights and/or acted with reckless disregard with regard to Plaintiff's Constitutional rights, which is evidence that they intended to violate Plaintiff's rights.

121. Plaintiff was caused to suffer severe pain and suffering. The conduct of Defendants was a substantial factor in causing the harm, losses, injuries, and damages of Plaintiff.

122. CITY and COUNTY are vicariously liable for the wrongful acts of Defendants DOE OFFICERS and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

123. The conduct of the individual Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling him to an award of exemplary and punitive damages. Plaintiff also seeks costs and attorneys' fees under this claim.

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF F.D., requests entry of judgment in his favor against CITY OF SAN BERNARDINO; COUNTY OF SAN BERNARDINO; and DOES 1 THROUGH 10, inclusive, as follows:

1.  For compensatory damages according to proof at trial, under federal and state law;

2.  For punitive and exemplary damages against the individual defendants in an amount to be proven at trial;

3.  For statutory damages;

4.  For reasonable attorneys' fees including litigation expenses;

5.  For costs of suit and interest incurred herein; and

6.  For such other and further relief as the Court may deem just and proper.

Dated:  September 16, 2021          **LAW OFFICES OF DALE K. GALIPO**

By:   /s/   *Dale K. Galipo*
          Dale K. Galipo
          *Attorney for Plaintiff*

## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby submits this demand that this action be tried in front of a jury.

Dated:  September 16, 2021                    **LAW OFFICES OF DALE K. GALIPO**


By:   _/s/_    _Dale K. Galipo_
                    Dale K. Galipo
                    _Attorney for Plaintiff_